UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: _____

TINA MARIE BARBUTO,

    Plaintiff,

vs.

MIAMI HERALD MEDIA COMPANY,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

1. The Miami Herald published articles of and concerning Tina Marie Barbuto on February 13, 2019 (and updated on February 14, 2019) ("Article 1") and October 13, 2019 ("Article 2") (collectively, the "Articles").[1] Article 2 hyperlinks back to Article 1 on the Miami Herald's website.

2. The Miami Herald created defamatory implications regarding Ms. Barbuto by failing to disclose publicly available undisputed facts about her in the Articles. In addition, the Miami Herald juxtaposed disclosed facts in such a way which caused a defamatory implication about Ms. Barbuto.

3. In particular, the Articles, individually and together, clearly imply that Ms. Barbuto was one of the masterminds of a multi-million healthcare fraud scheme. In reality, it was a **publicly undisputed fact** at the time that the Miami Herald published the Articles that Ms. Barbuto was a "**minor**" participant. The Miami Herald knew, was reckless in not knowing, or should have known this undisputed fact. The Miami Herald also knew that it is was a **publicly disclosed undisputed**

---

[1] *See* https://www.miamiherald.com/news/local/crime/article226196265.html; https://www.miamiherald.com/article236074258.html

**fact** that Ms. Barbuto had mental health issues which "contributed *substantially*" to Ms. Barbuto's *minor* participation because her issues made her susceptible to manipulation by *the* actual mastermind of the fraudulent scheme. Moreover, the Miami Herald also knew that Ms. Barbuto made $0 from the scheme.

4. The Miami Herald damaged Ms. Barbuto by knowingly, recklessly and/or negligently creating the *false* implications that Ms. Barbuto was a major (not "minor") participant in a multi-million-dollar fraud; decided on her own, without any manipulation, to become a major (not "minor") participant; and that she desired to and did line he own pockets as a result thereof.

5. Ms. Barbuto provided the Miami Herald with pre-suit notice, as required, before filing this lawsuit which described the above-referenced publicly available undisputed facts and also the provided citations to the documents wherein these publicly available facts are stated. In its response thereto, the Miami Herald did not deny it defamed Ms. Barbuto by implication (or otherwise). The Miami Herald also refused to apologize for, correct, and/or or retract the articles, each of which would have cost the Miami Herald nothing. Rather, the Miami Herald callously informed Ms. Barbuto that, due to corporate restructuring, she could not collect a judgment in the event she proves that the Miami Herald defamed her.

<b><u>Parties, Jurisdiction and Venue</u></b>

6. Plaintiff Ms. Barbuto is a resident of New York.

7. According to the Miami Herald's website (MiamiHerald.com), Defendant Miami Herald Media Company owns the Miami Herald and MiamiHerald.com, and they have a business office located at 3511 NW 91 Ave., Miami, FL 33172.[2] According to SunBiz, Defendant Miami

---

[2] https://www.miamiherald.com/customer-service/about-us/

Herald Media Company's principal place of business is Sacramento, California; is registered in Florida as an active Foreign Profit Corporation doing business in Florida; and its registered agent is located in Plantation, Florida.[3]

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9. This Court has personal jurisdiction over Defendant pursuant to § 48.193, Fla Stat. because Defendant: (i) operated, conducted, and engaged in a business venture in Florida; (ii) caused tortious injury by acts committed within Florida, including authoring the defamatory Articles about Plaintiff from within Florida; and (iii) engaged in substantial and not isolated activity within Florida.

10. Requiring Defendant to litigate the claims asserted herein does not offend traditional notions of fair play and substantial justice and is permitted by the Due Process Clause of the United States Constitution. Plaintiff's claims arise from the Articles which were authored and distributed in and from Florida. In addition, Defendant availed itself of numerous privileges in Florida, including those set forth above.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)(2)(3) because a substantial part of the events giving rise to the claims in this Complaint occurred in this District;

---

[3] http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=MIAMIHERALDMEDIA%20F060000053631&aggregateId=forp-f06000005363-a488583a-143e-4e5e-8159-7f9a62bd1c3b&searchTerm=Miami%20Herald%20Media%20Company&listNameOrder=MIAMIHERALDMEDIA%20F060000053631

Defendant is a resident of this District: and, as discussed above, because Defendant is subject to the Court's personal jurisdiction in this District.

## Facts

12. Arman Abovyan, M.D., and Ms. Barbuto were indicted in the Southern District of Florida for their alleged participation in a healthcare fraud scheme which indisputably was organized, controlled, and masterminded by Kenneth Chatman and his wife. *See* FLSD Docket Entry ("DE") 1; Case 9:18-cr-80122-DMM.

13. On November 26, 2018, Ms. Barbuto executed a Plea Agreement with the United States Attorney's Office for the Southern District of Florida (the "USA"). DE 162. Pursuant thereto, Ms. Barbuto agreed to plead guilty to Count 1, which charged that she conspired with other persons to commit heath care fraud. *Id.*, ¶ 1. The USA agreed to dismiss the remaining eleven (11) counts against her. *Id.*, ¶ 2. The same day the Plea Agreement was filed with the Court, Ms. Barbuto and the USA also filed their agreed Factual Proffer in connection therewith. DE 163.

14. The maximum sentence for the sole Count to which Ms. Barbuto pled guilty was ten (10) years of imprisonment. DE 162, ¶ 4. The USA, however, agreed to recommend to the Court that Ms. Barbuto's potential 10-year sentence should be greatly reduced because Ms. Barbuto was:

- A "***minor participant***" in Chatman's fraud scheme; and

- "[S]uffering from a ***significantly*** reduced mental capacity, which ***contributed substantially***" to her violation of the statute upon which Count 1 was based.

DE 162, ¶¶ 7(e), 7(i) (emphasis added).

18. The Court ultimately agreed to significantly reduce Ms. Barbuto's potential 10-year sentence based on the **publicly available undisputed facts** that she was a "**minor**" participant and mental health issues "**significantly**" **contributed** to her participation.

19. On January 23, 2019, Ms. Barbuto filed her Sentencing Memorandum. DE 238. The USA did not file a response or objection thereto. *See generally* Docket. As such, the USA did not object to the following statements in the Sentencing Memorandum:

- "For her lawyers, we saw *someone in need of help*. The Government saw that 'something was off' when they first interviewed her and *respectfully agreed that a diminished capacity departure was warranted*." "Kenny Chatman certainly saw it too. But, *for a street savvy predator like Kenny Chatman, Tina was easy prey*."

- "This Court presided over the case of Kenny Chatman and sentenced him accordingly. Of course, it will be no surprise to this Court that [an expert witness] will also describe Kenneth Chatman … *as predatory, the kind of person that Tina would fall prey to being used and manipulated by*."

- "This Court is very familiar with the facts of the case. This Court knows the lavish lifestyle (sic) Kenny Chatman and his Wife Laura using the proceeds of their fraudulent scheme. It was estimated that the Chatman's (sic) gained nearly $16 million dollars in fraud proceeds. And, that trickled down from the top. Lab owners and operators raked in money. As did sober home owners. Others received kickbacks and $100,000s in patient brokering fees."

- "*Tina Barbuto wasn't reaping the benefits of the fraud like others*. *Tina Barbuto wasn't living lavishly*. She was a salaried employee. Yet, her [sentencing] guidelines are driven by this amount and she is now responsible for paying over $3M in **joint and several** restitution … Tina Barbuto was a salaried employee … She did *not* line her pockets with the profits like some of her co-defendants. **Tina Barbuto gained nothing from the offense other her normal salary**."

- "As this case so aptly demonstrates, the amount of loss is often 'a kind of accident' providing a "relatively weak indicator of the moral seriousness of the offense or the need for deterrence.'" *United States v. Emmenegger*, 329 F. Supp. 2d 416, 427-28 (S.D.N.Y. 2004). **This is especially so in this case given that Tina Barbuto did not benefit personally from the fraud**."

- "There is a *difference in culpability between an employee earning her ordinary salary and an employee who conceives and executes a fraud with the purpose of putting its proceeds into his pocket* … Tina Barbuto was a salaried employee. *She did **not** receive kickbacks. She did **not** launder money. She did **not** engage in fraud for the purpose of lining her pockets with the proceeds*."

DE 238, pp. 3, 5-6, 14-15, 18-19 (emphasis added).

20. As shown above, it was *undisputed* that Ms. Barbuto was a "**minor participant**" in the fraudulent scheme which Chatman conceived and executed. It also was *undisputed* that mental health issues "contributed *substantially*" to her *minor* participation in the fraudulent scheme of Chatman -- a predator, who was "the kind of person that [Ms. Barbuto] *would fall prey to being used and manipulated by.*" Moreover, it was not disputed that Ms. Barbuto made $0.00 from the fraudulent scheme of Chatman (which netted him $16 million). These undisputed were publicly available.

21. Unfortunately, as shown below, the Miami Herald failed to disclose these crucial undisputed facts. The Miami Herald's failure to disclose these undisputed facts created the *false* defamatory implication that Ms. Barbuto was a major participant in Chatman's fraud scheme (notwithstanding it is undisputed that she was a "minor" participant); eagerly and knowingly participated with Chatman to conceive, and plan the execution of, Chatman's fraudulent scheme (as opposed to being easily manipulated by Chatman due to mental health issues, which "substantially" caused her to participate); and that she lined her own pockets with millions of dollars (notwithstanding that it is undisputed that she made $0.00 from Chatman's fraudulent scheme).

22. Article 1 is titled "Licensed psychotherapist gets prison after *making* $3.1 million healthcare *fraud work.*" (emphasis added). The relevant statements in Article 1 (in the order in which they appear) are:

- "A Dania Beach licensed mental health counselor with memberships in multiple national professional organizations became a ***multilevel*** *healthcare fraudster.*"

- "And *for keeping the fraud rolling* at Margate's Reflections Treatment Center, Tina Marie Barbuto was sentenced in federal

6

> court in West Palm Beach to three years in federal prison for attempt and conspiracy to commit mail fraud."[4]

- "Barbuto also owes restitution in the amount of $3,132,806.12, the total amount Reflections received from insurance companies while Barbuto worked there."

- "***Hanging all those fraudulent gains on Barbuto tells how much she meant to the operation*** was (sic) run by Kenneth Chatman [who is] doing federal prison time until 2040 as the shadow owner of Reflections and journey (sic) to Recovery in Lake Worth."

- "*Chatman relied on Barbuto* for all manner of tasks. Here's how *Barbuto oiled the machinery*, ***according to her admission of facts with her guilty plea***."[5]

23. The "admission of facts" to which the Miami Herald refers is the Factual Proffer mentioned above. DE 163. The Miami Herald thereafter lists many of the statements in the Factual Proffer. The "guilty plea" is the Plea Agreement, which was filed on the *same* day as the Factual Proffer. DE 162.

24. As such, the Miami Herald knew, was reckless in not knowing, or should have known that it was an *undisputed fact* that Ms. Barbuto was a "**minor participant**" in the fraudulent scheme which indisputably was conceived, controlled, engineered, and implemented by Chatman. The Miami Herald also knew, was reckless in not knowing, or should have known, that it was an *undisputed fact* that Ms. Barbuto's actions were "**substantially**" caused by Chatman's predatory manipulation of her. The Miami Herald further knew, was reckless in not knowing, or should have known, that it was an *undisputed fact* that Ms. Barbuto made $0.00 from Chatman's fraudulent scheme.

---

[4] Ms. Barbuto indisputably was not charged with mail fraud.

[5] All emphasis added.

25.  The relevant statements in Article 2 (in the order in which they appear) are:

- "Abovyan was convicted of seven counts of unlawful dispensing of buprenorphine, one count of conspiracy to possess, distribute and dispense controlled substances and attempt and conspiracy to commit mail fraud.  He's scheduled to be [incarcerated] until at least Mar. 29, 2027."[6]

- "Reflections was one of several supposed-to-be sober homes run as a shadow sultan by Kenneth Chatman.  Chatman's a guest of the federal government until 2040 after investigators uncovered the fraud, sex trafficking and money laundering at his treatment centers."

- "According to the guilty plea of *Chatman **fraud mechanic** Tina Barbuto*, a licensed mental health counselor who plead guilty to the mail fraud charge[7] after being indicted with Abovyan …"[8]

26.  The author's reference to Ms. Barbuto's guilty plea confirms that he read same.  As such, he *knew* that it was undisputed that: (a) Ms. Barbuto was a "***minor participant***" in the fraudulent scheme conceived and engineered by Chatman, and (b) the "minor" participation of Ms. Barbuto was "substantially" caused by mental health issues, which facilitated Chatman's manipulation of her.  Article 2, like Article 1, fails to disclose these publicly available undisputed facts.

---

[6] It is curious that the Miami Herald chose not to characterize Abovyan as a "*multilevel* fraudster" - as it did Ms. Barbuto in Article 1 - given that Abovyan was found guilty of 7 counts and sentenced to 10 years of incarceration.  In addition, the Miami Herald chose not to publish an article about Abovyan at time of his sentencing as it did with respect to Ms. Barbuto.

[7] This indicates a hyperlink to Article 1.  In addition, as stated previously, Ms. Barbuto was not charged with mail fraud.

[8] All emphasis added.

**Count I – Defamation By Implication**

27. Plaintiff repeats, realleges, and incorporates by reference the allegations in paragraphs 1-26 of this Complaint, as if fully stated herein.

28. Defendants published the Articles to the third parties.

29. The Articles were published without privilege or legal authorization, and if there was any such privilege or authorization (and there was not) it was intentionally abused.

30. Defendant knew, was reckless in not knowing, or should have known that it was a *publicly available undisputed fact* that Ms. Barbuto was a "**minor participant**" in the fraudulent scheme which indisputably was conceived, controlled, engineered, and implemented by Chatman. Defendant also knew, was reckless in not knowing, or should have known, that it was a *publicly available undisputed fact* that Ms. Barbuto's actions were "**substantially**" caused by Chatman's predatory manipulation of her. Defendant further knew, was reckless in not knowing, or should have known, that it was a *publicly available undisputed fact* that Ms. Barbuto made $0.00 from Chatman's fraudulent scheme.

31. Defendant failed to disclose these publicly available undisputed facts. Defendant's failure to disclose these publicly available undisputed facts created the false implications that Plaintiff was a major participant in Chatman's fraud scheme (notwithstanding it is undisputed that she was a "minor" participant); willfully and knowingly participated with Chatman to conceive, and plan the execution of, Chatman's fraudulent scheme (as opposed to being easily manipulated by Chatman due to mental health issues, which "substantially" caused her to participate); and that she lined her own pockets with millions of dollars (notwithstanding that it is undisputed that she made $0.00 from Chatman's fraudulent scheme). In addition, the title of Article 1 supported these false

implications. Defendant's characterization of Plaintiff, in Article 2, as "Chatman fraud mechanic" further supported these false implications.

32. Defendant's decision to juxtapose its characterization of Plaintiff as the "fraud mechanic" of Chatman with the disclosed fact that "Chatman's a guest of the federal government until 2040 after investigators uncovered the fraud, sex trafficking and money laundering at his treatment centers" created the false implication that Plaintiff also participated in Chatman's sex trafficking and money laundering. which is an additional basis to find Article 2 defamatory by implication.

33. The false implications created by Defendant in the Articles were defamatory because they exposed Plaintiff to public hate, contempt, ridicule, and disgrace, and because they induced an evil and unsavory opinion of Plaintiff into the minds of a substantial number of the community. The Articles were defamatory *per se* since they were of a nature tending to injure Plaintiff in her trade, business, and profession.

34. Defendant acted with fault, at least negligence, and with actual malice. Defendant knew the Articles would create false implications about Plaintiff, or recklessly disregarded the truth or falsity of the defamatory implications, when they published the Articles.

35. As a direct and proximate result of Defendant's creation of the false and defamatory implications about her, Plaintiff has suffered and will continue to suffer harm to her reputation, emotional distress, and other actual and presumed compensatory damages, consequential, and special damages in an amount that will be determined at trial.

36. Before filing this Complaint, Plaintiff demanded that Defendant retract the Articles and/or issue an apology or correction. Defendant did not deny the Articles were defamatory.

Defendant refused to retract the Articles and refused to issue and apology or correction. Instead, Defendant responded that it was judgment-proof due to corporate restructuring.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter an award and judgment in her favor, and against all Defendant as follows:

(a) awarding Plaintiff compensatory damages of at least $500,000;

(b) awarding Plaintiff punitive damages of at least $500,000;

(c) awarding Plaintiff all expenses and costs, including attorneys' fees;

(d) granting a narrowly tailored permanent injunction requiring the removal of all the Defendant's statements that are determined to be false and defamatory and enjoining Defendant from repeating such statements relating to Plaintiff; and

(e) such other and further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Date: February 12, 2021.

> Respectfully submitted,
>
> McLAUGHLIN & STERN
> CityPlace Office Tower
> 525 Okeechobee Blvd., Suite 1700
> West Palm Beach, FL 33401
> Tel. No. (561) 659-4020
> Fax. No. (561) 659-4438
> Email: nsolomon@mclaughlinstern.com
> By: */s/ Neil B. Solomon*
> Neil B. Solomon, Esq.
> Florida Bar Number.: 0544973
> *Attorney for Plaintiff*