UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-20608-BLOOM/Otazo-Reyes

TINA MARIE BARBUTO,

Plaintiff,

vs.

MIAMI HERALD MEDIA COMPANY,
and DAVID J. NEAL,

Defendants.
_________________________________/

**DEFENDANT DAVID J. NEAL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND LAWSUIT WITH PREJUDICE**

Defendant David J. Neal ("Neal"), pursuant to Federal Rule of Civil Procedure 12(b)(6), moves for entry of an order dismissing the Second Amended Complaint [ECF No. 34] and this action with prejudice. In support, Neal states as follows:

## A. Introduction

Plaintiff Tina Barbuto ("Barbuto") is an admitted healthcare fraudster and convicted felon. Barbuto, however, hopes this Court will ignore this indisputable fact, which is exactly what was accurately and fairly conveyed by Neal. Barbuto's Second Amended Complaint should be dismissed with prejudice for the following reasons: (1) Count I, based on Article 1, was already dismissed with prejudice; (2) Count II, based on Article 2, fails to state a cause of action; (3) Article 2 is privileged; and, (4) Neal is protected from liability under the Neutral Reporting Privilege. Because the Second Amended Complaint is meritless for numerous reasons and must be dismissed with prejudice because any amendments would be futile, Neal should also be awarded attorneys' fees based on Florida's anti-SLAPP statute.

## B. Background and Procedural History

### i. The Second Amended Complaint Violates this Court's September 17, 2021 Order.

1. On February 12, 2021, Barbuto filed her initial Complaint that named only the Miami Herald Media Company as a defendant.

2. On May 10, 2021, Barbuto filed her Amended Complaint that added Neal as a defendant. [ECF No. 10].

3. The Amended Complaint and the Second Amended Complaint are based on the publication of two articles in *The Miami Herald* on February 13, 2019 ("Article 1") and October 13, 2019 ("Article 2") (collectively, the "Articles").

4. On July 5, 2021, Neal filed his Motion to Dismiss Plaintiff's Amended Complaint. [ECF No. 21].

5. On September 17, 2021, this Court entered its Order on Motion to Dismiss, which granted in part and denied in part Neal's July 5, 2021 Motion to Dismiss. [ECF No. 33].

6. The September 17, 2021 Order concluded as follows:

> Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [21]**, is **GRANTED IN PART AND DENIED IN PART**. To the extent that Plaintiff's defamation claim against Neal is predicated upon the statements contained in Article 1, such claim is dismissed with prejudice. To the extent that Plaintiff's defamation claim against Neal is predicated upon the statements contained in Article 2, such claim is dismissed without prejudice for failure to comply with the pre-suit notice requirement contained in Florida Statutes section 770.01.
>
> Plaintiff may file a second amended complaint once she has complied with the pre-suit notice requirement, **but no later than October 4, 2021**.

*Id.* at 8 (emphasis in original).

7. In direct contradiction of this Court's September 17, 2021 Order that **dismissed with prejudice** any claims predicated on statements contained in Article 1, Count I in the Second Amended Complaint is exclusively predicated on Article 1. [ECF No. 34 at 12].

8. This Court should, again, dismiss with prejudice Count I because it is predicated on Article 1 and also reemphasize that any claims predicated on Count I are precluded by this Court's September 17, 2021 Order.

9. Moreover, this Court should strike Count I because, given this Court's ruling on September 17, 2021, Plaintiff may not reassert Count I. *Guzman v. City of Hialeah*, Case No. 15-23985, 2017 WL 9440579, at *2 (S.D. Fla. Aug. 18, 2017) (striking a count that had previously been dismissed with prejudice); *Guzman v. City of Hialeah*, Case No. 15-23985, 2017 WL 4324632, at *1 (S.D. Fla. Sep. 29, 2017) (adopting the magistrate's report and recommendation as to the motion to strike).

**ii. <u>Barbuto is an admitted fraudster.</u>**

10. One of the subjects of the Articles was Barbuto's role in a multi-million dollar healthcare fraud in which she pled guilty to conspiracy with persons known and unknown to commit health care fraud. *See* Factual Proffer, attached as **Exhibit A** and Plea Agreement, attached as **Exhibit B**[1]. For her role in the fraudulent scheme, Barbuto was sentenced to three years in federal prison.

11. The Second Amended Complaint asserts two counts: Count I is for Defamation by Implication based on Article 1. Count II is for Defamation by Implication based on Article 2.

12. Because Count I has already been dismissed with prejudice, this Motion only addresses Count II.

[1] When considering a 12(b)(6) motion to dismiss, the court's review is generally limited to the four corners of the complaint, but the court may also consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Corsi v. Newsmax Media, Inc.*, 2021 WL 626855, at *4 (S.D. Fla. Feb. 12, 2021). Barbuto repeatedly references the Factual Proffer and Plea Agreement, and this Court can take judicial notice under Federal Rule of Evidence 201(b)(2).

13. Barbuto's allegations supporting Count II are straightforward: *Article 2 created defamatory implications by omitting facts and juxtaposing facts in such a way that caused a defamatory implication.* [ECF No. 34 ¶¶ 14-15, 17-27].

14. Barbuto alleges two defamatory implications based on Article 2: *(1) Barbuto was "the 'fraud mechanic,'" and (2) Barbuto participated in Chatman's sex trafficking and money laundering. Id.* at ¶¶ 14-15.

15. Defamation is governed by state law, in this case Florida, and the various defamation privileges are an integral part of the law of defamation. *Rendon v. Bloomberg, L.P.,* 403 F. Supp. 3d 1269, 1275-76 (S.D. Fla., 2019).

16. As explained below, the Second Amended Complaint must be dismissed with prejudice.

## C. Legal Memorandum

### i. Count I Fails because It was Dismissed with Prejudice.

As mentioned above, Count I is barred because it is predicated on Article 1, and this Court dismissed with prejudice Barbuto's defamation claim against Neal predicated upon the statements contained in Article 1. [ECF No. 33 at 8.] Accordingly, Count I should be dismissed with prejudice and stricken with prejudice. *Guzman,* 2017 WL 9440579, at *2; *Guzman,* 2017 WL 4324632, at *1.

### ii. Count II Fails to State a Cause of Action.

Defamation by implication arises, not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts. *Readon v. WPLG, LLC,* 317 So. 3d 1229, 1237 (Fla. 3d DCA 2021) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla.

2008)). A determination of whether a plaintiff fails to state a claim for defamation by implication is appropriate on a motion to dismiss. *Readon,* 317 So. 3d at 1236 (affirming dismissal of the complaint with prejudice). Here, Barbuto relies on <u>three</u> statements in Article 2 that she alleges are the foundation of her claim for defamation by implication:

> "Abovyan was convicted of seven counts of unlawful dispensing of buprenorphine, one count of conspiracy to possess, distribute and dispense controlled substances and attempt and conspiracy to commit mail fraud. He's scheduled to be [incarcerated] until at least Mar. 29, 2027."
>
> "Reflections was one of several supposed-to-be sober homes run as a shadow sultan by Kenneth Chatman. Chatman's a guest of the federal government until 2040 after investigators uncovered the fraud, sex trafficking and money laundering at his treatment centers."
>
> "According to the guilty plea of Chatman fraud mechanic Tina Barbuto, a licensed mental health counselor who plead guilty to the mail fraud charge after being indicted with Abovyan, Abovyan played a key role of ordering tests and gaining drugs as a medical director."

[ECF No. 34 ¶ 13]. From these three statements, Barbuto alleges two defamatory implications: (1) Barbuto was "the 'fraud mechanic,'" and (2) Barbuto participated in Chatman's sex trafficking and money laundering. *Id*. at ¶¶ 14-15. Barbuto fails to state a cause of action for defamation by implication as to either of the alleged implications.

As for the first alleged implication, it fails because Article 2 actually called Barbuto a "fraud mechanic" and defamation by implication arises "not from what is said but from what is implied . . . ." *Readon,* 317 So. 3d at 1237; *Jews For Jesus, Inc.,* 997 So. 2d at 1106. Indeed, Barbuto fails to realize that "defamation by implication applies in circumstances where literally true statements are conveyed in such a way to create a false impression . . . ." *Jews For Jesus, Inc.,* 997 So. 2d at 1108. Barbuto does not allege that literally true statements identified above create a false impression that Barbuto was the fraud mechanic, nor could she because Neal specifically stated that Barbuto was the "Chatman fraud mechanic." Because there was no

implication, just a direct statement, Barbuto fails to state a claim as to the first alleged defamatory implication. *Readon,* 317 So. 3d at 1237-38 ("The negative statements about [the plaintiff], that he was engaged in potentially underhanded business dealings, were not implied but rather stated explicitly.")

As for the second alleged implication, Neal did not impermissibly juxtapose a series of true facts so as to create a defamatory implication. Barbuto alleges Neal juxtaposed the statement that Barbuto was the "fraud mechanic" of Chatman with the fact that "Chatman's a guest of the federal government until 2040 after investigators uncovered the fraud, sex trafficking and money laundering at his treatment centers," which created a false implication that Barbuto participated in Chatman's sex trafficking and money laundering. First, Barbuto does not admit that the statement that she was the "fraud mechanic" of Chatman is true; therefore, she fails to sufficiently allege that Neal juxtaposed a series of true facts. *Readon,* 317 So. 3d at 1237; *Jews For Jesus, Inc.,* 997 So. 2d at 1108. In fact, if Barbuto admitted that she was the "fraud mechanic" of Chatman, which she needs to do to state a claim for the second alleged implication, Barbuto would eviscerate her first alleged implication. Second, Neal's statements about Barbuto did not imply that she participated in Chatman's sex trafficking and money laundering, and in fact, there was no implication at all. At no point did Neal suggest or imply that Barbuto participated in sex trafficking or money laundering. Rather, Neal specifically said that Barbuto was the "Chatman fraud mechanic." Accordingly, Barbuto fails to state a claim as to the second alleged defamatory implication. *Id.*

**iii. Count II Fails Because the Article 2 is Privileged.**

Under Florida law, the "news media has been given a qualified privilege to accurately report on the information they receive from government officials. This privilege includes the broadcast of the contents of an official document, as long as their account is reasonably accurate

and fair, even if the official documents contain erroneous information." *Woodard v. Sunbeam Television Corp*., 616 So. 2d 501, 502 (Fla. 3d DCA 1993) (internal quotation marks omitted) (citations omitted); accord *Alan v. Palm Beach Newspapers, Inc*., 973 So. 2d 1177, 1180 (Fla. 4th DCA 2008) (same). All of the protections of defamation law that are afforded to the media and private defendants extend to the tort of defamation by implication. *Jews For Jesus, Inc.,* 997 So. 2d at 1108. Dismissal on a motion to dismiss is appropriate where it appears from the complaint that the statements at issue are privileged. As one appellate court has noted, "Moreover, the numerous cases cited by the parties confirm the fact that trial courts, upon motions to dismiss, routinely make decisions as to whether a privilege applies to protect an allegedly defamatory statement." *Huszar v. Gross*, 468 So. 2d 512, 516 (Fla. 1st DCA 1985).

Barbuto concedes at least several of the statements come from government records, which were Barbuto's Plea Agreement and Factual Proffer. [ECF No. 34 ¶ 24] ("The "admission of facts" referred to in Article 1 refers to the Factual Proffer mentioned above. DE 163. Article 1 thereafter lists many of the statements in the Factual Proffer. The "guilty plea" is the Plea Agreement, which was filed on the same day as the Factual Proffer. DE 162.") Moreover, a review of Article 2 as well as the Factual Proffer and Plea Agreement demonstrate that the only statements regarding Barbuto derive from the Factual Proffer and Plea Agreement:

> **<u>According to the guilty plea</u>** of Chatman fraud mechanic Tina Barbuto, a licensed mental health counselor who plead guilty to the mail fraud charge after being indicted with Abovyan, Abovyan played a key role of ordering tests and gaining drugs as a medical director.
>
> "Abovyan was paid a monthly salary (about $11,667, according to Abovyan's court filings) and in return ordered drug testing for the treatment center patients, regardless whether such testing was medically necessary or conducted and billed in compliance with the terms of insurance plans," **<u>Barbuto's statement read.</u>**
>
> **<u>Barbuto says</u>** she knew Abovyan used pre-signed prescriptions, other doctors' DEA numbers and forged signatures to get buprenorphine.

[ECF No. 34 at Ex. 2 (emphasis added)]; *see also* Ex. A ¶¶ 7-8. The face of Article 2 and the governmental records demonstrate that Article 2 relies on governmental records, which makes the publication of the statements privileged. When such privileged statements and the remainder of Article 2 are read together with the remaining statements sued upon, the gist is the same, and there can be no action with regard to the remaining statements. A further comparison of all of the statements Barbuto takes issue with and statements from the governmental documents demonstrates that Neal's reporting was fair and accurate based on the governmental records:

| **Article Language at Issue[2]** | **Governmental Documents** |
|---|---|
| **Article 2** | |
| "Abovyan was convicted of seven counts of unlawful dispensing of buprenorphine, one count of conspiracy to possess, distribute and dispense controlled substances and attempt and conspiracy to commit mail fraud. He's scheduled to be [incarcerated] until at least Mar. 29, 2027." | This statement is not of and concerning Barbuto. |
| "Reflections was one of several supposed-to-be sober homes run as a shadow sultan by Kenneth Chatman. Chatman's a guest of the federal government until 2040 after investigators uncovered the fraud, sex trafficking and money laundering at his treatment centers." | This statement is not of and concerning Barbuto. |
| "According to the guilty plea of Chatman *fraud mechanic* Tina Barbuto, a licensed mental health counselor who plead guilty to the mail fraud charge after being indicted with Abovyan, Abovyan played a key role of ordering tests and gaining drugs as a medical director." | Dictionary.com defines "mechanic" as "a person who repairs and maintains machinery, motors, etc."[3]<br><br>Here, the Factual Proffer demonstrates that Barbuto's actions maintained the fraud scheme in numerous ways. |

[2] See ECF No. 34 ¶ 13.
[3] https://www.dictionary.com/browse/mechanic

#151522956_v2

Article 2 was fair and reasonably accurate because it conveyed a substantially correct account of the governmental documents related to Barbuto's conviction for being a healthcare fraudster; therefore, Article 2 is privileged and the case should be dismissed. *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502-503 (Fla. 3d DCA 1993). Moreover, the gist of the remaining statements is the same as the privileged statements and the remainder of Article 2 making suit on the remaining statements untenable as well. *See, e.g., Smith v. Cuban Am. Nat'l Found*., 731 So.2d 702, 706 (Fla. 3d DCA 1999).

**iv. <u>Neal is Protected from Liability Under the Neutral Reporting Privilege.</u>**

Florida law is well settled that disinterested communications of matters of public concern are privileged, even if defamatory. *Rendon,* F. Supp. 3d at 1276 (citing *Abram v. Odham*, 89 So. 2d 334, 336 (Fla. 1956); *Huszar v. Gross*, 468 So.2d 512, 516 (Fla. 1st DCA 1985)). "However, neutral reporting privilege is only extended to disinterested and neutral reporting by members of the media." *Id.* (citing *Ortega Trujillo v. Banco Cent. Del Ecuador*, 17 F. Supp. 2d 1334, 1338 (S.D. Fla. 1998)). Additionally, whether the neutral reporting privilege protects Article 2 is a legal determination that the Court can resolve on a motion to dismiss. *Id*.

Here, Article 2 is the type of disinterested and neutral reporting that Florida law and the First Amendment are designed to protect. The main focus of Article 2 is the outcome of the government's investigation into, and prosecution of, the multi-million dollar healthcare fraud of which Barbuto pled guilty to participating in. As this Court is fully aware, South Florida is a hotbed of healthcare fraud, and the crimes being committed as well as the outcomes of those investigations and prosecutions are unquestionably of concern to the South Florida community. Moreover, nothing about the Articles involves any opinions by Neal or anything other than a disinterested, factual reporting that used governmental documents as sources. Because Article 2

is a disinterested account of newsworthy information, Neal is protected from liability. *Rendon,* F. Supp. 3d at 1277; *Corsi,* 2021 WL 626855, at *9. Because no amendment could overcome the neutral reporting privilege, the Amended Complaint must be dismissed with prejudice. *Corsi,* 2021 WL 626855, at *11.

**v. <u>Neal is Entitled to Fees and Costs under Florida's Anti-SLAPP Statute.</u>**

Florida's anti-SLAPP statute prohibits a plaintiff from filing "any lawsuit ... against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue ... as protected by the First Amendment to the United States Constitution and s.5, Art. I of the State Constitution." Fla. Stat. § 768.295(3), Fla. Stat. (2020). The anti-SLAPP statute also provides that a court "shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section." Fla. Stat. § 768.295(4) (emphasis added). For the many reasons described above, Barbuto's lawsuit is meritless, and Neal has the right not to be subjected to meritless lawsuits filed only because he exercised his constitutional right to free speech in connection with a public issue—i.e. writing a column on a matter of public concern

For the foregoing reasons, this Court should dismiss the Second Amended Complaint with prejudice.

**WHEREFORE**, Neal respectfully requests that this Court dismiss with prejudice the Second Amended Complaint and award fees and costs in addition to any further relief this Court deems proper.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Defendant David J. Neal
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
(305) 374-8500 (telephone)
(305) 789-7799 (facsimile)

By: /s/Sanford L. Bohrer
Sanford L. Bohrer (FBN 160643))
Email: sbohrer@hklaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of October 2021**,** I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF System.

By: /s/Sanford L. Bohrer