UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 21-cv-20608-BLOOM/Otazo-Reyes**

TINA MARIE BARBUTO,

 Plaintiff,

v.

MIAMI HERALD MEDIA COMPANY, *et al.*,

 Defendants.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant David J. Neal's Motion to Dismiss Second Amended Complaint and Lawsuit with Prejudice, ECF No. [35] ("Motion"). Plaintiff Tina Marie Barbuto filed a Response, ECF No. [40], to which Neal filed a Reply, ECF No. [46]. The Court has carefully considered the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted.

## I. BACKGROUND

This case arises from two news articles written by Neal and published by the Miami Herald Media Company that Barbuto claims are defamatory. *See generally* ECF No. [34].[1] The first article is titled, "Licensed psychotherapist gets prison after making $3.1 million healthcare fraud work" ("Article 1"). ECF No. [34-1]. Article 1 concerned Barbuto's conviction and role in a multi-million-dollar fraud perpetrated at Reflections Treatment Center, a sober home for which she worked as a mental health counselor. *Id.*

---

[1] Plaintiff requested and obtained a entry of clerk's default against the Miami Herald on June 28, 2021. *See* ECF No. [19]. The Second Amended Complaint is against Neal only.

The second article, published eight months later, is titled, "A doctor in a $5.5 million fraud lost his freedom in February — his license on Wednesday" ("Article 2"). ECF No. [34-2]. The subject of Article 2 is Arman Abovyan, a doctor who was convicted in relation to the fraud perpetrated at Reflections. *Id.* Pertinent here, the article stated:

> Reflections was one of several supposed-to-be sober homes run as a shadow sultan by Kenneth Chatman. Chatman's a guest of the federal government until 2040 after investigators uncovered the fraud, sex trafficking and money laundering at his treatment centers.
>
> According to the guilty plea of Chatman fraud mechanic Tina Barbuto, a licensed mental health counselor who plead guilty to the mail fraud charge after being indicted with Abovyan, Abovyan played a key role of ordering tests and gaining drugs as a medical director.

*Id.* (emphasis in original). The underlined phrase was a hyperlink to Article 1.

The Court dismissed the first amended complaint on two grounds. *See Barbuto v. Miami Herald Media Co.*, No. 21-CV-20608, 2021 WL 4244870 (S.D. Fla. Sept. 17, 2021). First, the Court found that Barbuto did not serve Neal with the required presuit notice. *Id.* at *3. Second, the Court concluded that Article 1 was published outside of the two-year statute of limitations applicable to defamation claims. *Id*. Barbuto had argued in her opposition that the hyperlink in Article 2 constituted a republication of Article 1. *Id.* But the Court disagreed, reasoning that Barbuto did not allege a republication-by-hyperlinking theory, nor did she provide supporting authority for such a theory. *Id.* at *4. The Court dismissed the defamation claim with prejudice "[t]o the extent . . . [it was] . . . predicated upon the statements contained in Article 1." *Id.* at *5. But the Court dismissed the defamation claim without prejudice as to Article 2, granting Barbuto leave to comply with the presuit notice requirement. *Id.*

Barbuto filed the operative Second Amended Complaint, reasserting a defamation by implication claim concerning Article 1 (Count I) and a defamation by implication claim concerning

Article 2 (Count II). ECF No. [34] at 12–14.[2] Barbuto contends that Article 1 is defamatory by implication because it omitted facts showing that she was a minor participant in the Chatman fraud, was manipulated by Chatman, and received no money from the fraud, thus creating a false impression to the contrary. *Id.* at ¶¶ 36–37. Barbuto maintains that Article 2 is defamatory by implication because it (1) does not disclose the facts relied upon for Neal's characterization of her as a "fraud mechanic," and (2) created the false impression, by juxtaposing certain facts, that Barbuto was involved in Chatman's sex trafficking and money laundering. *Id.* at ¶¶ 44–45.

Barbuto further alleges that Article 2 is a republication of Article 1, setting forth two reasons why. *Id.* at ¶¶ 29–30. First, according to Barbuto, "Article 2 went beyond merely hyperlinking" and "add[ed] an additional statement . . . which . . . is defamatory by implication": that she was the "Chatman fraud mechanic." *Id.* at ¶ 29. And second, Neal "conceal[ed] every fact upon which he relied to support his declaration Ms. Barbuto was the 'fraud mechanic' for Chatman in Article 2," forcing readers to access Article 1. *Id.* at ¶ 30.

Neal moves to dismiss the second amended complaint, advancing four arguments: (1) the Court already dismissed with prejudice claims premised on Article 1, (2) Barbuto fails to state a claim for defamation by implication as to Article 2, (3) Article 2 is privileged because the alleged statements come from government records, and (4) Article 2 is subject to the neutral reporting privilege. ECF No. [35].

## II.   LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic

---

[2] Barbuto alleges that she provided the requisite notice, ECF No. [34] at ¶ 12, and Neal does not move to dismiss on that basis.

recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). But this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted).

## III.   DISCUSSION

### A.   *Dismissal with Prejudice Concerning Article 1*

Neal contends that Count I fails because the Court has already dismissed any claims concerning Article 1 with prejudice. ECF No. [35] at 4. Barbuto responds that she was granted

leave to amend without limitation and that the operative pleading sets forth that Article 2 is a republication of Article 1. ECF No. [40] at 8–10.

Barbuto misinterprets the scope of the Court's leave to amend. The Court dismissed with prejudice any defamation claim "predicated upon the statements contained in Article 1." *Barbuto*, 2021 WL 4244870, at *5. The Court only granted leave to comply with the presuit notice requirement. *Id.* Barbuto did not have license to reallege claims premised on Article 1.

In addition, although the Court noted that Barbuto had not alleged a republication theory, the Court also rejected the viability of such a theory. *Id.* at *3. The Court explained that Barbuto "has not cited, nor has the Court located, any authority to support her theory of republication as valid or recognized under Florida law." *Id.* Indeed, as the Court pointed out, "at least one federal court in Florida has noted the lack of authority on this point." *Id.* (citing *Klayman v. City Pages*, No. 5:13-CV-143-OC-22PRL, 2015 WL 1546173, at *12 (M.D. Fla. Apr. 3, 2015)).

In her opposition, Barbuto does not provide Florida law to the contrary. Instead, she argues that *Klayman* implicitly recognizes that "Florida courts would find that republication occurs where a subsequent online article *more than* hyperlinks a previous online article (as alleged here)." ECF No. [40] at 8 (emphasis in original). Barbuto then cites state and federal cases outside of Florida, all of which were decided *before* this Court's decision. *Id.* at 8 n.7.

In other words, Barbuto asks the Court to reconsider its decision without a proper basis. Whether to grant a motion for reconsideration is within the Court's discretion, which is generally exercised under only three grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Rental Boat Corp. v. Great Lakes Ins. SE*, No. 20-60352-CIV, 2020 WL 7496267, at *1 (S.D. Fla. Dec. 2, 2020). Reconsideration is not a proper vehicle to "ask the Court to rethink what the Court

already thought through—rightly or wrongly." *Id*. Nor is it an opportunity "to raise arguments that could have been—but were not—raised previously." *Id.* at *2. Barbuto does not argue that any of the three grounds for reconsideration are present. Reconsideration is therefore improper.

In any event, Barbuto's argument is unpersuasive. As recently noted in *Lokhova v. Halper*, 995 F.3d 134 (4th Cir. 2021), "[t]he public policy supporting the single publication rule and the traditional principles of republication dictate that a mere hyperlink, without more, cannot constitute republication." *Id.* at 143.[3] In *Lokhova*, the appellant argued that the court could not resolve on a motion to dismiss whether a hyperlink from one New York Times article to another constituted a republication. *Id.* The Fourth Circuit disagreed, reasoning that (1) the hyperlink served as reference to existing newspaper audiences rather than a new audience, and (2) the appellant did not allege that the hyperlinked text was defamatory. *Id.*

The same reasoning applies here. "[A] hyperlink directing readers to a previous article on the *same* website does not direct the previous article to a new audience, it merely reshuffles the existing audience." *Id.* (emphasis in original). Barbuto does not allege that the articles appeared in separate websites. Nor does Barbuto allege that the hyperlinked text—that she "plead guilty to the mail fraud charge"—is itself defamatory. Indeed, even though Barbuto disputes that she was charged with mail fraud, she expressly disclaims a defamation claim based on the inaccuracy. *See* ECF No. [34] at 5 n.6 ("Ms. Barbuto indisputably was not charged with mail fraud. But this type

---

[3] The few courts to have addressed the issue have reached the same conclusion. *See Kiebala v. Boris*, 928 F.3d 680, 687 (7th Cir. 2019) (applying Illinois law); *In re Philadelphia Newspapers*, LLC, 690 F.3d 161, 175 (3d Cir. 2012) (applying Pennsylvania law); *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 276 (S.D.N.Y. 2016) (applying New York law); *Salyer v. S. Poverty L. Ctr., Inc.*, 701 F. Supp. 2d 912, 917 (W.D. Ky. 2009) (applying Kentucky law); *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. 02 CV 2258 JM (AJB), 2007 WL 935703, at *7 (S.D. Cal. Mar. 7, 2007) (applying California law). Florida also follows the single publication rule. *See, e.g.*, *Polishko v. Tibbitt*, 46 Fla. L. Weekly D2247 (Fla. 3d DCA Oct. 13, 2021).

of inaccuracy does not necessarily give rise to a defamation claim and Plaintiff does not allege here it is a basis for same.").

To be sure, there is some authority for the proposition that a republication may occur where a later publication goes "beyond merely hyperlinking" and includes "additional statements which [the plaintiff] alleges are themselves defamatory." *Enigma*, 194 F. Supp. 3d at 277. Barbuto alleges that Article 2 adds the additional statement that Barbuto was a "fraud mechanic," which she alleges is defamatory by implication. ECF No. 34 at ¶ 29.[4] But Barbuto never asked for, let alone was granted, leave to allege such a theory. *See Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (holding that "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly"). In any event, as shown below, Barbuto fails to state a claim of defamation by implication concerning Article 2, and Neal is covered by the neutral reporting and fair reporting privileges. There are therefore no additional defamatory statements to support a republication.

Consistent with the Court's previous order, Count I is dismissed without prejudice.

**B.**     *Defamation by Implication in Article 2*

Defamation by implication arises in two circumstances: "(1) a juxtaposition of a series of facts so as to imply a defamatory connection between them, or (2) the creation of a defamatory implication by omitting facts." *Klayman v. City Pages*, 650 F. App'x 744, 749 (11th Cir. 2016) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)).

---

[4] Barbuto also advances the theory that "Article 2 is a republication of Article 1 because. . . Neal expected the readers of Article 2 to read Article 1, via the Hyperlink, due to . . . Neal's decision to conceal every fact upon which he relied to support his declaration Ms. Barbuto was the 'fraud mechanic' for Chatman in Article 2." ECF No. [34] at ¶ 30. Barbuto, however, is describing the typical use for a hyperlink: to provide quick access to information published somewhere else. Such access is not enough for republication. *See, e.g.*, *In re Philadelphia Newspapers*, 690 F.3d at 175.

Neal submits that the two statements Barbuto complains of do not fit either scenario. Specifically, Neal argues that he did not imply that Barbuto was a fraud mechanic, but expressly stated it, so there is no implication by omitted facts. ECF No. [35] at 5–6. He further contends that Barbuto does not allege that the "fraud mechanic" statement is true, which is necessary for implication by juxtaposition. *Id.* at 6. Neal also denies that he implied that Barbuto was engaged in other crimes, noting that he only called her a *fraud* mechanic. *Id.*

Barbuto characterizes Neal's arguments as circular. ECF No. [40] at 11–12. According to Barbuto, most casual readers would not carefully parse out the words in Article 2. *Id.* at 11. Rather, the close positioning of the statement regarding Chatman's "fraud, sex trafficking and money laundering" with the statement that Barbuto was the "Chatman fraud mechanic" would lead "a sizable portion of the readers of Article 2 to conclude that Barbuto also participated in 'sex trafficking and money laundering' at Chatman's clinics where she worked." *Id.* at 12. And as to the "fraud mechanic" statement, Barbuto submits that Neal "ignores [her] allegations and also ignores what Neal was trying to convey to his readers by adding 'mechanic' after 'fraud.'" *Id.*

Neal's arguments are neither circular nor inaccurate. Barbuto's implication-by-omission theory is that Neal did not disclose all facts underlying the accusation that she was the Chatman fraud mechanic. ECF No. [34] at ¶ 44. Even if that is true, the accusation was "not implied but rather stated explicitly." *Readon v. WPLG*, LLC, 317 So. 3d 1229, 1237 (Fla. 3d DCA 2021).[5] Therefore, the "fraud mechanic" statement cannot form the basis for defamation by implication. *Id.* (affirming dismissal of defamation by implication claim where article expressly said that the plaintiff engaged in shady business dealings).

---

[5] Barbuto admits that the accusation was spelled out. *See* ECF No. [40] at 6–7 (stating that "the first and only time Neal mentioned in Article 2 Ms. Barbuto's role in Chatman's nefarious scheme is in one sentence where Neal stated that Ms. Barbuto plead guilty to a mail fraud and characterized her as the 'Chatman fraud mechanic'").

The implication-by-juxtaposition theory fares no better. "[D]efamation by implication applies in circumstances where *literally true* statements are conveyed in such a way as to create a false impression." *Rapp*, 997 So. 2d at 1108 (emphasis added); *accord AIX Specialty Ins. Co. v. Dginguerian*, 18-24099-CIV, 2019 WL 4573255, at *5 (S.D. Fla. Sept. 20, 2019) (explaining that a defamatory statement may be made by implication by the juxtaposition of a "literally true statement or photograph"). Barbuto does not allege that the "fraud mechanic" statement is literally true. To the contrary, she contends that the accusation is defamatory. *See* ECF No. [34] at ¶ 29. Consequently, Barbuto has failed to state a claim for defamation by implication. *See Plain Bay Sales, LLC v. Gallaher*, 9:18-CV-80581-WM, 2020 WL 1042218, at *3 (S.D. Fla. Mar. 2, 2020) (dismissing defamation by implication claim where plaintiff did not allege that the statements giving rise to false impression were literally true); *see also Corsi v. Newsmax Media*, Inc., 519 F. Supp. 3d 1110, 1124 (S.D. Fla. 2021) ("The Complaint pleads only that Fairbanks' accusations were false—not that they were true and gave a false implication—which requires dismissal").

As such, Barbuto fails to state a claim for defamation by implication as to Article 2.[6]

### C.    *Fair and Neutral Reporting Privileges*

Even if Barbuto could state a cause of action concerning Article 2, Neal would be protected by the fair and neutral reporting privileges.[7] "Under Florida law, it is well settled that disinterested communications of matters of public concern are privileged, even if defamatory." *Corsi v.*

---

[6] Barbuto contends that even if Article 1 cannot support an independent claim, it must be considered as "context" to Article 2. ECF No. [40] at 6–7. Barbuto also continuously references a comment left under Article 1 in which a reader says that Barbuto has "her morals in the toilet" because she stole $3 million. *See* ECF No. [34-1] at 4. However, neither Article 1 nor the comment fix Barbuto's failure to allege a defamatory implication or juxtaposed facts that are literally true.

[7] Neal raises privilege only as to Count II, ECF No. [35] at 9–10, given his position that all claims regarding Article 1 were dismissed with privilege (which is true). Nevertheless, the Court's conclusions regarding privilege applies with equal force to both articles.

*Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1124 (S.D. Fla. 2021). The neutral reporting privilege applies to "disinterested and neutral reporting by members of the media." *Ortega Trujillo v. Banco Cent. Del Ecuador*, 17 F. Supp. 2d 1334, 1338 (S.D. Fla. 1998) (internal quotation marks omitted).

In addition, there is a fair reporting privilege "given to news media 'to accurately report on the information they receive from government officials.'" *Dershowitz v. Cable News Network, Inc.*, 20-61872-CIV, 2021 WL 2621139, at *3 (S.D. Fla. May 25, 2021) (quoting *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502 (Fla. 3d DCA 1993)). "This privilege includes the broadcast of the contents of an official document, so long as their account is reasonably accurate and fair, even if the official documents contain erroneous information." *Rigmaiden v. NBCUniversal Media, LLC*, 307 So. 3d 918 (Fla. 3d DCA 2020).

Neal submits that Article 2 "is the type of disinterested and neutral reporting that Florida law and the First Amendment are designed to protect." ECF No. [35] at 9. The Court agrees. It is obvious from the face of the articles that Neal was engaging in disinterested and neutral reporting about a matter of public concern—healthcare fraud in South Florida. Barbuto does not allege or argue otherwise. Thus, the neutral reporting privilege would apply. *See, e.g., Corsi*, 519 F. Supp. 3d at 1124.

Neal further contends that his characterization of Barbuto as a fraud mechanic—and he defines "mechanic" as meaning to "maintain"—is demonstrated by her factual proffer, which shows that she "maintained the fraud scheme in numerous ways." ECF No. [35] at 8. Barbuto's opposition—which is difficult to understand—is that Neal concealed facts showing that she did not profit from the scheme and that Neal's definition of mechanic is "nonsensical," creating a factual issue as to what he meant. ECF No. [40] at 13.

Barbuto's contention is without merit. The fair reporting privilege applies even if "[s]ome

of the published information may have been phrased to catch the . . . readership's attention." *Alan v. Palm Beach Newspapers, Inc.*, 973 So. 2d 1177, 1180 (Fla. 4th DCA 2008); *accord Larreal v. Telemundo of Florida, LLC*, 489 F. Supp. 3d 1309, 1323 (S.D. Fla. 2020) (explaining that "the fair report privilege does not dictate that news organizations report on the contents of official files in sterile language"). Barbuto does not articulate how the "fraud mechanic" moniker is inaccurate and unfair. At most, Barbuto contends that Neal omitted from his reporting facts showing that she was a minor participant in the Chatman fraud, was manipulated by Chatman, and received no money from the fraud. ECF No. [34] at ¶¶ 36–37. But those allegations relate only to statements made in Article 1, not the "fraud mechanic" statement in Article 2. *See id.* at ¶¶ 20–21, 36–37. What is more, the privilege applies even when reporting omits pertinent information. *See Carson v. News Journal Corp.*, 790 So. 2d 1120, 1122 (Fla. 5th DCA 2001) (holding that fair reporting privilege applied even though report did not reveal other exculpatory information); *see also Larreal*, 489 F. Supp. 3d at 1323 (explaining that "the media is free to select the focus of its reporting without losing the protection of the fair report privilege").

In short, Article 2 is also covered by the fair reporting privilege.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [35]**, is **GRANTED**. The Second Amended Complaint is **DISMISSED WITH PREJUDICE** and this case is **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 13, 2022.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Case No. 21-cv-20608-BLOOM/Otazo-Reyes

Copies to:

Counsel of Record